## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Blake DeConinck, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| Pentagon Federal Credit Union, | JURY TRIAL DEMANDED |
| Defendant. | |

Plaintiff Blake DeConinck ("Plaintiff"), individually and on behalf of all others similarly situated ("Class"), by his attorneys, files this Class Action Complaint ("Complaint") against Defendant Pentagon Federal Credit Union ("PenFed"). The following allegations are based on personal knowledge as to Plaintiff's own conduct and on the investigation conducted by their counsel as to all other allegations.

## INTRODUCTION AND SUMMARY OF ACTION

1.      Plaintiff brings this class action alleging that PenFed negligently performed duplicate transactions, resulting in twice the authorized amount of money being withdrawn from Plaintiff's and the Class's accounts and rendering accounts deficient of funds and subjecting Plaintiff to additional fees and penalties.

2.      PenFed is a nationwide credit union that provides banking services to thousands of customers in Minnesota and throughout the United States.

3.      As a result of these unauthorized duplicate transactions, Plaintiff's and the Class's account balances were significantly lower than they should have been.

4.      Regularly scheduled authorized transactions continued to be automatically withdrawn, despite this unexpected and unavoidable depletion of Plaintiff's and the Class's account balances.

5.      As a result, Plaintiff and the Class had previously authorized, automated payments bounce, resulting in the incurrence of late fees associated with these bounced transactions. These unpaid transactions will continue to accrue interest until Plaintiff and the Class have enough funds in their accounts to make their payment.

6.      In addition to these late fees, Plaintiff and the Class also incurred $30 insufficient-funds fees from PenFed itself in connection with overdrawing their accounts, despite the fact that PenFed was at fault for the duplicate transactions.

7.      Furthermore, Plaintiff and the Class's credit scores have decreased as a result of authorized transactions being denied—transactions for which Plaintiff and the Class had carefully budgeted for.

## PARTIES

8.      Plaintiff Blake DeConinck is an individual citizen of the United States residing in Buffalo, Minnesota.

9.      Defendant PenFed is a federal credit union with its headquarters located at 7940 Jones Branch Drive, Tysons, Virginia 22102.

## JURISDICTION AND VENUE

10.     This Court has personal jurisdiction over PenFed because: a portion of the wrongdoing alleged in this Complaint took place in this state; PenFed is authorized to do business here and systematically and continuously conducts business here; PenFed has sufficient minimum contacts with this state; and PenFed otherwise intentionally avails itself of the markets in this state through the promotion and marketing of its services in this state. These facts render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11.     This Court has subject matter jurisdiction over all of Plaintiff's and the Class's claims pursuant to 28 U.S.C. § 1332 as this is a class action, upon information and belief the matter in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, and Plaintiff and the Class members are citizens of states different from PenFed.

12.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this district.

## STATEMENT OF FACTS

13.     Upon information and belief, PenFed is the nation's second-largest federal credit union, serving 2.8 million members worldwide with $36.6 billion in assets as of June 30, 2022.[1]

---

[1] About PenFed, https://www.penfed.org/about-penfed.

14.     PenFed markets itself as "secure and convenient" and assures customers "[w]hether you need to save money, borrow funds, or manage your accounts, we have your back every step of the way."[2]

15.     On November 14, 2022, an authorized automated withdrawal in the amount of $1,732.78 left Plaintiff's PenFed account to cover his mortgage payment.

16.     On the same day, PenFed performed a duplicate withdrawal in the same amount, this time unauthorized. This second withdrawal left Plaintiff with insufficient funds to cover automated withdrawals for his credit card payment, utilities, and car insurance.

17.     When an automatic withdrawal was attempted to pay Plaintiff's credit card bill, the transaction was denied. Plaintiff was also charged a $30 insufficient-funds fee in connection with this bounced transaction.

18.     Plaintiff could not make another payment on his credit card until the original bounced payment had been fully processed, which took between five and ten business days. During this time, interest continued to accrue on Plaintiff's credit card.

19.     As a result of this bounced transaction, Plaintiff's credit score has or will decrease, damaging a credit record he has built up carefully and steadily over time.

20.     Plaintiff informed PenFed about the duplicate transaction and was told that PenFed was aware of the problem, but offered no further explanations or details.

---

[2] Home page, https://www.penfed.org/.

4

21.    PenFed acknowledged the widespread duplicate transactions on their website, displaying a message banner reading: "We are currently experiencing issues with some duplicate debit transactions (ACH). We apologize for the inconvenience and appreciate your patience as we work to correct this issue."[3] Despite the assurances to "have [customers'] back every step of the way," PenFed offered no further details regarding how or when it planned to return the duplicate funds or redress customers' incurred late fees and decreases in credit score.

22.    On November 17, 2022, Plaintiff received an email from PenFed confirming that his mortgage payment in the amount of $1,732 had indeed been sent on November 14 despite the defect in PenFed's automatic payment system.

23.    However, on November 18, 2022, Plaintiff discovered that his mortgage payment had been returned to his account, undelivered. Plaintiff incurred late fees in connection with his returned mortgage payment.

24.    PenFed eventually closed Plaintiff's checking account because it reflected a negative balance—as a direct result of PenFed's unauthorized duplicate transaction.

25.    The negative $71 "owed" on Plaintiff's checking account has since been applied to his savings account, despite the fact that Plaintiff's negative balance was due entirely to PenFed's system error.

---

[3] Tweet from @wrbluepearl, Twitter (Nov. 14, 2022) https://twitter.com/wrbluepearl/status/1592271215846195201/photo/1 ("I was one of the people affected by this. By pure dumb luck I had an 'extra' (that wasn't really extra) *$10,000* in my account to cover *your* mistake. How are you planning to make this square with your soon-to-be-ex-customers?").

26.    As a result of PenFed's refusal to remedy their misconduct, the inaccurate and wrongfully charged $71 "owed" has been sent to PenFed's collections department, further harming Plaintiff's credit score.

27.    Plaintiff and the Class relied on PenFed's representations that it would manage their accounts securely, reliably, and accurately. Had Plaintiff and other PenFed customers known of the risk of unauthorized transactions, this risk would have been material to their and any reasonable consumer's decision to bank with PenFed.

28.    Indeed, had Plaintiff and the Class known about the material risk of duplicate transactions, they would not have chosen PenFed as their credit union and avoided significant out-of-pocket costs they have or will incur in the form of late or insufficient-funds fees and/or a decrease in their credit scores.

29.    As a consequence of PenFed's false and misleading statements, its negligent conduct leading to the duplicate transactions, and its failure to redress the costs incurred by Plaintiff and the Class, Plaintiff and the Class have suffered injury in fact and actual damages in the form of late and insufficient-funds fees. As a direct and proximate result of the duplicate transactions, Plaintiff and the Class will suffer damages in the form of, *inter alia*: decreased credit scores, time wasted attempting to convince PenFed to reverse the duplicate transaction and removing insufficient fund fees, and the failure to receive the benefit of the bargain in banking with PenFed.

30.    Accordingly, Plaintiff and all others similarly situated seek redress for PenFed's misrepresentations and negligence.

31.      In furtherance of the public interest, and in order to remedy PenFed's wrongful conduct, Plaintiff brings this action as a class action, and asserts claims on behalf of himself and a Class of similarly situated persons seeking money damages and injunctive relief for PenFed's conduct described herein pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

32.      **The Class:** The proposed Class will include all members of PenFed whose accounts were affected by unauthorized duplicate transactions.

33.      **Numerosity:** Members of the Class are so numerous that individual joinder is impracticable. Moreover, the Class is composed of an easily ascertainable, self-identifying set of individuals whose accounts were affected by unauthorized duplicate transactions. The precise number of Class members can be ascertained through discovery, which includes PenFed's records. Plaintiff estimates the number of Class members to be in at least the thousands. The disposition of their claims through a class action will benefit both the parties and this Court. The proposed Class members are ascertainable because they are defined by reference to objective criteria. In addition, and upon information and belief, the names and addresses of all members of the proposed class can be identified in business records maintained by PenFed.

34.      **Commonality:** There are questions of law and fact common to the Class that will materially advance the litigation, and these common questions predominate over any questions affecting only individual Class members. Among the questions common to the Class are:

a.    Whether PenFed's automatic withdrawal system suffers from a defect causing unauthorized duplicate transactions;

b.    The origins and implementation of, and the justifications for, if any, PenFed's policies and technology relating to unauthorized duplicate transactions;

c.    When PenFed because aware of the unauthorized duplicate transactions and how it responded to that knowledge;

d.    Whether PenFed actively concealed and/or failed to notify customers of the unauthorized duplicate transactions;

e.    Whether PenFed knew of the unauthorized duplicate transactions but failed to disclose the problem and its consequences to their affected customers;

f.    Whether a reasonable customer would consider the risk of unauthorized duplicate transactions and associated consequences to be material;

g.    Whether PenFed's conduct violates state consumer protection laws as asserted herein;

h.    Whether PenFed's conduct constitutes negligence;

i.    Whether PenFed's actions constitute a misleading or a or deceptive act in the conduct of any trade or commerce;

j.    Whether Plaintiff and the Class are entitled to compensatory damages, including, among other things: (i) compensation for all out-of-pocket monies expended by members of the Class for late fees, insufficient fund

fees, and interest charges; and (ii) compensation for the decrease in Class

members' credit scores leading to worse loan and credit rates; and

k.     Whether Plaintiff and the other Class members are entitled to equitable

relief, including, but not limited to, restitution or injunctive relief.

35.     **Typicality:** Plaintiff's claims are typical of the claims of the member of the

Class, as all such claims arise out of PenFed's conduct in performing unauthorized

duplicate transactions. All of Plaintiff's claims are typical of the claims of the Class

because Plaintiff and all Class members were injured in the same manner by PenFed's

uniform course of conduct described herein. Plaintiff and all Class members have the

same claims against PenFed relating to the conduct alleged herein, and the same events

giving rise to Plaintiff's claims for relief are identical to those giving rise to the claims of

all Class members. Plaintiff and all Class members sustained monetary and economic

injuries including, but not limited to, ascertainable losses arising out of PenFed's

wrongful conduct as described herein. Plaintiff is advancing the same claims and legal

theories on behalf of himself and all absent Class members.

36.     **Adequate Representation:** Plaintiff will fairly and adequately protect the

interests of the members of the Class and has no interests antagonistic to those of the

Class. Plaintiff has retained counsel experienced in the prosecution of complex class

actions including, but not limited to, consumer class actions involving negligence,

misrepresentation, and state consumer protection statutes.

37.     **Predominance:** This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members.

38.     **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the Class is impracticable. Given the amount at issue for each Class member, individual suits would not be economically viable; however, should individual Class members bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the judicial system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

39.     Because of the relatively small size of the typical individual class members' claims, it is unlikely that individual class members could afford to seek recovery on their own. This is especially true in light of the size and resources of PenFed. A class action is, therefore, the only reasonable means by which class members can obtain relief.

## CLAIMS FOR RELIEF

### COUNT 1
### Negligence

40.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

41.     PenFed had a duty to exercise reasonable care in executing only authorized withdrawals from Plaintiff's and the Class's accounts.

42.     PenFed breached that duty by performing unauthorized duplicate withdrawal transactions.

43.     PenFed's breach of their duties proximately caused Plaintiff and the Class to incur late fees, insufficient-funds fees, and decreases to their credit scores.

44.     Plaintiff and the Class seek reimbursement of the duplicate withdrawn funds, late fees, and insufficient-funds fees.

### COUNT II
### Negligent Misrepresentation

45.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

46.     PenFed had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in executing only authorized withdrawals from Plaintiff's and the Class's accounts.

47.     PenFed breached that duty by performing unauthorized duplicate withdrawal transactions.

11

48.     PenFed knew or should have known that their automated withdrawal banking system had a defect or technical error causing duplicate withdrawals from Plaintiff's and the Class's accounts, or that the banking system was not otherwise as advertised or suitable for the secure, reliable, and accurate execution of authorized transactions.

49.     As a direct and proximate result of PenFed's conduct, Plaintiff and the Class have suffered actual damages in the form of late fees, insufficient-funds fees, and decreases to their credit scores. Further, Plaintiff and the Class would not have chosen PenFed as their banking institution had they known about the risk of duplicate withdrawals, which does not conform to PenFed's representations as providing a "secure and convenient" banking experience.

### COUNT III
### Violation of Virginia Consumer Protection Act (Va. Code Ann. § 59.1-196)

50.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

51.     PenFed, Plaintiff, and the Class members are "[p]erson[s]" within the meaning of Va. Code Ann. § 59.1-198.

52.     PenFed is a "[s]upplier" within the meaning of Va. Code An. § 59.1-198.

53.     PenFed's management of banking transactions is a "[s]ervice" within the meaning of Va. Code Ann. § 59.1-198.

54.     PenFed engaged in "[c]onsumer transaction[s]" within the meaning of Va. Code Ann. § 59.1-198.

55.     The Virginia Consumer Protection Act ("Virginia CPA") prohibits "fraudulent acts or practices committed by a supplier in connection with a consumer transaction." Va. Code Ann. § 59.1-200(A).

56.     The Virginia CPA makes unlawful specific acts, including:

57.     "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model" (Va. Code An.. §59.1-200(A)(6))

58.     "[a]dvertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised" (Va. Code An. §59.1-200(A)(8)); and

59.     "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction" (Va. Code Ann. § 59.1-200(A)(14)).

60.     PenFed violated the Virginia CPA by negligently misrepresenting, omitting, concealing, and/or failing to disclose the material risk of unauthorized duplicate transactions associated with its automated banking services.

61.     Specifically, by negligently misrepresenting, omitting, concealing, and failing to disclose material facts regarding the quality, characteristics, and benefits of their banking services, PenFed engaged in one or more unfair or deceptive acts or practice in the conduct of trade or commerce, in violation of the Virginia CPA, including:

        a.      Representing its services as "secure and convenient;" and

b.     Representing that it "monitor[s] and evaluate[s] internal control that help ensure [customers'] assets remain safeguarded".[4]

62.     PenFed's omissions and misrepresentations described herein had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members into banking with PenFed.

63.     The facts regarding the banking services that PenFed negligently misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their banking decisions.

64.     Plaintiff and Class members had no way of discerning that PenFed's representations were false and misleading, or otherwise learning the facts that PenFed had concealed or failed to disclose.

65.     PenFed had an ongoing duty to Plaintiff and the Class members to refrain from unfair and deceptive practices under the Virginia CPA in the course of their business. Specifically, PenFed owed Plaintiff and Class members a duty to disclose all the material facts regarding the material risk of unauthorized duplicate transactions.

66.     Plaintiff and Class members were aggrieved by PenFed's violations of the Virginia CPA because they were damaged as a direct and proximate result of PenFed's deceptive and unfair practices. Plaintiff and the Class members relied on the acts of

---

[4] 2021 Annual Report, penfed.org/content/dam/penfed/general/pdf/general-pdfs/PNFD_AnnualReport2021_web.pdf.

concealment, omissions, and unfair practices. Plaintiff and Class members relied on the acts of concealment, omissions, and misrepresentations regarding the nature of PenFed's banking services. Had Plaintiff and the Class members known about the material risk of unauthorized duplicate transactions, they would not have chosen PenFed to manage their accounts.

67.     As a result of PenFed's violations of the Virginia CPA, as alleged herein, Plaintiff and the Class members seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief under the Virginia CPA.

**COUNT IV**
**Violation of Minnesota Uniform Deceptive Trade Practices Act (Minn. Stat. §§ 325D.44)**

68.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

69.     PenFed is a "person" within the meaning of the Minnesota Uniform Deceptive Trade Practices Act (MUDTPA).

70.     PenFed willingly engaged in deceptive trade practices, in violation of the MUDTPA, by negligently misrepresenting the quality of its banking services by falsely representing its services as "secure and convenient" and that PenFed "monitor[s] and evaluate[s] internal control that help ensure [customers'] assets remain safeguarded".[5]

---

[5] *Id.*

71.    PenFed knew or should have known that its banking services did not have the quality described above because of the material risk of performing unauthorized duplicate transactions.

72.    PenFed's misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff and Class members with respect to the quality, standards, benefits, grade, and suitability of PenFed's banking services.

73.    PenFed intended that Plaintiff and Class members would rely on its misrepresentations, concealment, deceptions, and/or omissions regarding the quality, standards, benefits, grade, and suitability of PenFed's banking services.

74.    PenFed's conduct and omissions described herein occurred repeatedly in PenFed's trade or business and were capable of deceiving a substantial portion of the consuming public.

75.    The facts concealed or not disclosed by PenFed were material facts in that Plaintiff, Class members, and any reasonable consumer would have considered them in deciding whether to bank with PenFed. Had Plaintiff and Class members known that PenFed's banking services did not have the quality advertised by PenFed, they would not have chosen to bank with PenFed.

76.    PenFed intended that Plaintiff and the Class members would rely on the deception by agreeing to bank with PenFed, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

77.     As a direct and proximate result of PenFed's conduct, Plaintiff and the

Class members have suffered actual damages in the form of late fees, insufficient fund

fees, lowered credit scores, and unreturned funds in the amount of the unauthorized

duplicate transaction.

78.     Plaintiff and the Class members would not have chosen to bank with

PenFed at all had they known of the risk of unauthorized duplicate transactions and/or

conduct that does not conform to the quality described in PenFed's representations to the

public.

79.     Pursuant to Minn. Stat. § 8.31, subd. 3(a), and §325D.45, Plaintiff and the

Class members seek injunctive relief, attorneys' fees, costs, and any other jut and proper

relief available for PenFed's violations of the MUDTPA.

## COUNT V
### Violation of the Minnesota False Statement in Advertisement Act
### (Minn. Stat. § 325F.67)

80.     Plaintiff and the Class incorporate by reference each preceding and

succeeding paragraph as though fully set forth at length herein.

81.     The Minnesota False Statement in Advertising Act ("MFSAA") prohibits

any advertisement that "contains any material assertion, representation, or statement of

fact which is untrue, deceptive, or misleading…whether or not pecuniary or other specific

damage to any person occurs as a direct result thereof". Minn. Stat. § 325F.67

82.     As described herein, PenFed willingly engaged in false statements in

advertisement, in violation of the MFSAA, by misrepresenting the quality of its banking

services by falsely representing thems as "secure and convenient" and that PenFed

"monitor[s] and evaluate[s] internal control that help ensure [customers'] assets remain safeguarded".[6]

83.    Plaintiff and the Class were deceived by and relied upon PenFed's affirmative representations, including but not limited to, advertising their banking services as safe, secure, and closely monitored.

84.    PenFed's statements regarding the purported quality and functionality of their banking services were material to prospective consumers, and were untrue, deceptive, and misleading.

85.    PenFed has violated the MFSAA by engaging in this false advertising scheme described herein.

86.    Plaintiff and the Class have been injured and have suffered economic damages from PenFed's false advertising scheme.

87.    Pursuant to Minn. Stat. § 8.31, subd. 3a, Plaintiff and the Class are entitled to relief for PenFed's violations of the MFSAA, including: (1) an order enjoining PenFed from continuing to engage in the scheme described herein; (2) damages; (3) restitution and other equitable remedies; and (4) recovery of their costs and reasonable attorneys fees.

## COUNT VI
### Unjust Enrichment/Restitution

88.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

---

[6] *Id.*

18

89.     PenFed has been enriched as a result of the conduct described in this Complaint.

90.     PenFed received a benefit from Plaintiff and Class members in the form of unauthorized duplicate transactions, late fees, and insufficient-funds fees.

91.     Retention of these benefits by PenFed would be unjust and inequitable because PenFed received these benefits by engaging in a negligent, false, deceptive, and misleading scheme to market their banking services as safe, secure, and closely monitored, and by engaging in the unlawful, unjust, and wrongful acts and practices described in this Complaint.

92.     The benefits, in whole or in part, that PenFed received were not legitimately earned and came at the expense of Plaintiff and other Class members.

93.     PenFed is guilty of malice, oppression, and/or fraud through its willful and conscious disregard for the rights of Plaintiff and other Class members.

94.     Plaintiff and Class members are entitled to restitution and disgorgement of all amounts unjustly retained by PenFed, as well as other appropriate relief.

## COUNT VII
## Breach of Contract

95.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

96.     Plaintiff and the Class formed a contract with PenFed at the time they deposited funds into and transferred funds through PenFed's services. The terms of that contract include the promises and affirmations of fact made by PenFed through their

marketing materials and statements which constitute express warranties, became part of

the basis of the bargain, and area part of a standardized contract between Plaintiff and the

Class on the one hand, and PenFed on the other.

97.    In exchange for PenFed's assurance to Plaintiff and the Class that their

funds would be maintained securely and accurately, Plaintiff and the Class funded their

accounts and utilized banking services which generated revenue for PenFed.

98.    Plaintiff and the Class gave consideration that was fair and reasonable, and

have performed all conditions, covenants, and promises required to be performed.

99.    PenFed breached the terms of this contract, including the express

warranties, with Plaintiff and the Class members by not delivering a product and service

which provided the promised benefits as described above.

100.    As a result of PenFed's breach of its contract and warranties, Plaintiff and

the Class members have been damaged in an amount to be proven at trial.

## COUNT VIII
## Conversion

101.    Plaintiff and the Class incorporate by reference each preceding and

succeeding paragraph as though fully set forth at length herein.

102.    Plaintiff and the Class deposited funds and transferred funds through

PenFed's services.

103.    PenFed knowingly and intentionally exercised control over the funds

belong to Plaintiff and the Class, restraining funds, denying Plaintiff and Class members

access to their funds, and performing unauthorized transactions.

20

104.    Because of the unlawful unauthorized transactions and ensuing restraint of funds imposed by PenFed, the rights of Plaintiff and the Class members to their funds were interfered with as their funds were removed and thus could not be used in the matter in which they desired.

105.    As a result of the foregoing actions of PenFed, Plaintiff and the Class have been damaged in an amount to be proved at trial.

## COUNT IX
## Breach of Fiduciary Duty

106.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

107.    PenFed owed a fiduciary duty to Plaintiff and the Class to properly protect, secure, transfer, and retain all funds that lawfully belonged to them.

108.    As alleged herein, PenFed breached those fiduciary duties by failing to prevent the unauthorized duplicate transactions and failing to return funds owed to Plaintiff and the Class.

109.    PenFed breached those fiduciary duties by denying Plaintiff and the Class members access to the funds that lawfully belonged to them.

110.    PenFed further breached those fiduciary duties by failing to properly protect, secure, transfer, and retain all funds that lawfully belonged to Plaintiff and Class members.

111.    As a result of the foregoing actions of PenFed, Plaintiff and the Class have been damaged in an amount to be proven at trial.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court enter judgment in their favor and against PenFed as follows:

A.  For an Order certifying this action as a class action and appointing Plaintiffs and their Counsel to represent the Class;

B.  For an award of actual damages and compensatory damages in an amount to be determined;

C.  For an award of costs of suit and attorneys' fees, as allowable by law; and

D.  Such other and further relief as this court may deem just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

Dated:  January 27, 2023

    */s/Daniel E. Gustafson*
Daniel E. Gustafson (#202241)
Amanda M. Williams (#341691)
Frances Mahoney-Mosedale (#402741)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
dgustafson@gustafsongluek.com
awilliams@gustafsongluek.com
fmahoneymosedale@gustafsongluek.com

***Counsel for Plaintiff***